IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

SMALLBIZPROS, INC., d/b/a          *
PADGETT BUSINESS SERVICES,
                                   *
         Plaintiff,
                                   *
vs.
                                   *      CASE NO. 3:05-CV-98(CDL)

JAMES R. COURT and VIVIAN COURT,   *

         Defendants               *

O R D E R

    Presently pending before the Court is Plaintiff's Motion for
Preliminary Injunction (Doc. 2).  Plaintiff, a franchisor, seeks to
enjoin Defendants, its former franchisees, from engaging in certain
activities.  For the reasons set forth below, this motion is granted.

BACKGROUND

    Plaintiff has a franchise system, the Padgett Business Services
System, for providing services to small business owners.  Plaintiff
markets and offers these services, which include a variety of
accounting and business counseling services, through a network of
locally owned and operated offices.  These local offices are known to
the public as "Padgett Business Services" and operated pursuant to a
franchise agreement that includes a license to use Plaintiff's
trademarks and trade names, as well as the Padgett Business Services
System.

    Defendants entered into a Franchise Agreement ("Agreement") with
Plaintiff on February 14, 1994.  The Agreement granted Defendants a
non-exclusive license to operate a Padgett Business Services
franchise in a defined area of Northern Michigan.  Defendants began

operating the franchise from an office located at 380 S. Main Street, Freeland, Michigan.  Under the Agreement, Defendants were responsible for paying an initial franchise fee, as well as monthly royalty and fee payments.  In return, Plaintiff agreed to provide marketing, training, and operational resources to Defendants.

Defendants contend that, beginning in 2000, Plaintiff breached the Agreement by markedly decreasing the quality and quantity of the support services available to Defendants.  Defendants assert that although they made attempts to contact Plaintiff about the problems and to request support services, their calls went unanswered or their messages were not returned in a timely manner.  Defendants continued to operate their Padgett Business Services franchise, but they argue that this operation was without the assistance and benefit of the Padgett name and resources.  Plaintiff disputes Defendants' characterization of the resources and services made available to Defendants and contends that Defendants never voiced any material complaint regarding the services and support they received.

Beginning in July 2005, Defendants refused to pay Plaintiff the royalties due under the Agreement.  On August 25, 2005, Defendants contacted Plaintiff and advised Plaintiff that they considered the Agreement to be "fully and finally terminated."  In response to Defendants' letter, Plaintiff sent Defendants a Notice of Default and Demand, demanding that Defendants pay all royalties owed under the Agreement or immediately fulfill the post-termination obligations contained in the Agreement.[1]  Defendants responded on October 6, 2005

---

[1]These post-termination obligations include cooperating in the transfer of clients and customers to Plaintiff and turning over to Plaintiff all of Plaintiff's manuals, client and customer lists, and forms and files relating to the Padgett Business Services System.

that they did not intend to cure the alleged default and that they considered the Agreement to be terminated.  On October 12, 2005, Plaintiff sent a letter to Defendants stating that the Agreement was terminated and proposing a scenario under which Plaintiff would not commence a lawsuit against Defendants for breach of the Agreement. On October 21, 2005, Defendants rejected Plaintiff's proposal, and the instant lawsuit ensued.

After their August 25, 2005 letter purporting to terminate the Agreement, Defendants continued operating a business which offered certain small business services from their office in Freeland, Michigan.[2]  Defendants contend, however, that they immediately began to disassociate their business from Padgett Business Services. Although they continued operating from the same location, Defendants adopted a new corporate name, Tri-City Business Services, and gathered their Padgett materials in anticipation of returning them to Plaintiff.  Although Plaintiff alleges that Defendants continued using the Padgett name and materials after termination of the Agreement, Plaintiff stated at the hearing on this motion that based on the best information available to it, Defendants have discontinued

---

[2]Plaintiff contends that this operation is in violation of the Agreement's covenant not to compete, which provides that the franchisees (Defendants) will not, for one year after the termination of the Agreement, engage in the operation of any business within the franchise territory providing bookkeeping or income tax preparation services; divert or attempt to divert any customers located within the franchise territory; or employ or seek to employ any person employed by Plaintiff or another Padgett franchisee.  Defendants contend that the covenant not to compete is not enforceable against them.  The Agreement contains a choice of law provision specifying that Georgia law shall govern the contract except that the restrictive covenants shall be governed by the law of the state in which they are to be applied—in this case, the State of Michigan.

use of the Padgett name and have given the Padgett materials to their attorney, who intended to return them to Plaintiff.

Plaintiff brings claims for, *inter alia*, trademark infringement, unfair competition, and trademark dilution under the Lanham Act, *see* 15 U.S.C. §§ 1114, 1125(a), 1125(c), and for breach of contract. Plaintiff seeks permanent and preliminary injunctive relief*, see* Fed. R. Civ. P. 65, enjoining Defendants from 1) operating a competing small business services office in violation of the Agreement for a period of one year from the date of the injunction and 2) diverting or attempting to divert any customers from Plaintiff.  Plaintiff further requests that the Court order Defendants to cooperate, in accordance with the Agreement's post-termination provision, in the "orderly transfer of [Plaintiff's] clients and customers, and relinquish any and all rights and interests [they] may have in such clients and customers to [Plaintiff] or its designee."[3]

## DISCUSSION

To obtain preliminary injunctive relief in this case, Plaintiff has the burden to establish the following:  (1) Plaintiff has a substantial likelihood of success on the merits; (2) Plaintiff will suffer irreparable injury without the injunction; (3) The threatened injury to Plaintiff if the injunction is not granted outweighs the

---

[3]Plaintiff also requests that Defendants be enjoined from engaging in activities that would constitute infringement or dilution of Plaintiff's trademarks and trade names.  Plaintiff further asks that Defendants be ordered to return all Padgett manuals and materials to Plaintiff. Defendants have represented, and Plaintiff has not disputed, that they have stopped using Plaintiff's trademarks and trade names, that they have taken affirmative steps to disassociate themselves from Plaintiff, and that they have taken steps to return all Padgett materials to Plaintiff.  Therefore, these portions of Plaintiff's injunctive relief request are moot.

Case 3:05-cv-00098-CDL   Document 24   Filed 02/02/06   Page 5 of 13

threatened injury to Defendants if the injunction is granted; and (4) The injunction would not be adverse to the public interest. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) (noting that preliminary injunction is *only* available if there is no adequate legal remedy and if it is necessary to prevent irreparable harm and preserve the court's power to render a meaningful decision on the merits); *Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993).

As discussed *supra*, Plaintiff conceded that Defendants have discontinued use of the Padgett name and was in the process of returning the Padgett Business Services materials. Therefore, the key remaining question is whether Defendants' continued operation of a business providing small business services at the same location as the former Padgett Business Services franchise constitutes an impermissible violation of the Agreement's covenant not to compete or unfair competition under the Lanham Act.[4]   At the hearing on Plaintiff's motion, the parties agreed that the motion could be decided on the affidavits submitted by the parties in support of their positions.

To prevail on its claim based on Defendants' alleged breach of the covenant not to compete, Plaintiff must show that Defendants are violating an enforceable covenant not to compete. The covenant not

---

[4]Because the Court finds that Plaintiff has established a substantial likelihood of success on the merits of its claim based on Defendants' alleged breach of the post-termination covenant not to compete, *see infra*, and because an injunction enforcing the covenant not to compete would also generally serve to enjoin Defendants from engaging in the activities which Plaintiff claims violate the Lanham Act, it is unnecessary at this time to evaluate the likelihood of success on the merits of Plaintiff's Lanham Act claim.

to compete in the Agreement provides that Defendants will not, for one year after the termination of the Agreement, engage—as an owner or manager—in the operation of any business within the franchise territory providing bookkeeping or income tax preparation services; divert or attempt to divert any customers located within the franchise territory; or employ or seek to employ any person employed by Plaintiff or another Padgett franchisee.  It is undisputed that Defendants are operating, within the franchise territory, a small business services company which provides bookkeeping and tax preparation services.  Defendants argue, however, that this operation should continue because 1) the covenant not to compete is not enforceable and 2) even if the covenant not to compete is generally enforceable, Plaintiff should not be able to enforce it because of unclean hands.[5]

The Agreement provides that the covenant not to compete shall be governed by and construed under the law of the state where it is to apply—in this case, the State of Michigan.  Defendants contend that Michigan law contravenes Georgia public policy and that Georgia law thus applies to render the covenant not to compete unenforceable.[6]

---

[5]Defendants also argue that the covenant not to compete is not enforceable because they were entitled to terminate the entire Agreement due to Plaintiff's alleged breach—and the covenant not to compete does not survive this termination.  Defendants have not shown that they were entitled, under the Agreement, to terminate the Agreement.  They argue, however, that they were within their legal and/or equitable rights to terminate the Agreement and that the Agreement's post-termination obligations are no longer enforceable.  To the extent that this argument is one for rescission of the Agreement, the circumstances of this case do not support rescission as an available remedy.  *See* O.C.G.A. § 13-4-62.

[6]Covenants not to compete must be generally "reasonable" in time, scope, and territory under both Georgia law and Michigan law.  *See W.R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465, 422 S.E.2d 529, 531 (1992);

Under Georgia law, the courts will refuse to honor a choice of law clause if two requirements are met: 1) there are significant contacts with the State of Georgia such that the choice of Georgia law is not constitutionally impermissible or arbitrary and 2) application of the chosen law would "'contravene the policy of, or would be prejudicial to the interests of'" the State of Georgia. *Keener v. Convergys Corp.*, 342 F.3d 1264, 1267 (11th Cir. 2003) (quoting *Convergys Corp. v. Keener*, 276 Ga. 808, 810, 582 S.E.2d 84, 85-86 (2003)). Pretermitting the question whether there are significant contacts with the State of Georgia to justify applying Georgia law to a restrictive covenant which would be enforced in the State of Michigan, the Court finds that application of Michigan law would not contravene the policy of or be prejudicial to the interests of the State of Georgia because the Agreement would be enforceable even under Georgia law.

For purposes of analyzing a covenant not to compete, Georgia considers franchise agreements to be analogous to employment contracts, and covenants in such agreements receive strict scrutiny and are not blue-penciled. *See Advance Tech. Consultants, Inc.*, 250 Ga. App. at 320, 551 S.E.2d at 737; *Watson v. Waffle House, Inc.*, 253

---

*Bristol Window & Door, Inc. v. Hoogenstyn*, 250 Mich. App. 478, 493, 650 N.W.2d 670, 678 (2002). The key difference between the laws of the two states is that Michigan employs the "blue pencil" rule: an unreasonable agreement may be limited to render it reasonable. *Bristol*, 250 Mich. App. at 485-86, 650 N.W.2d at 674; *see also Calder Dev. Assoc., Inc. v. Knuth*, No. 248819, 2004 WL 2102028, at *3 (Mich. Ct. App. Sept. 21, 2004). Georgia does not employ the "blue pencil" rule in reviewing restrictive covenants subject to strict scrutiny, such as those in franchise agreements and employment contracts: if an agreement is unreasonable, it is unenforceable and cannot be modified by the court. *See Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 250 Ga. App. 317, 320, 551 S.E.2d 735, 737 (2001).

Ga. 671, 672, 324 S.E.2d 175, 177 (1985); *Rita Personnel Servs. v. KOT,* 229 Ga. 314, 315-17, 191 S.E.2d 79, 80-81 (1972). A restrictive covenant subject to strict scrutiny will be upheld if it is reasonable, and courts generally examine the covenant's duration, territorial coverage, and scope of activity to determine whether the restrictions are reasonable. *See Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 292, 498 S.E.2d 346, 350-51 (1998).

In this case, the restrictive covenant's duration is one year. Based on the current record, this is a reasonable time restriction. *See Baggett*, 231 Ga. App. at 292, 498 S.E.2d at 351 (noting that a two-year duration is often considered reasonable in strict scrutiny cases). The covenant at issue here covers the franchise territory defined in the Agreement—a territory covering eight zip codes in Michigan. Based on the current record, this is a reasonable territorial restriction. *See Nat'l Settlement Assoc. of Ga., Inc. v. Creel*, 256 Ga. 329, 331-32, 349 S.E.2d 177, 180 (1986) (upholding restriction forbidding competition within 200 mile radius of Atlanta, Georgia as reasonable under strict scrutiny standard because former employee worked in substantial portion of territory and was the only employee who worked there). Finally, the covenant not to compete forbids Defendants from engaging, as an owner or in any managerial capacity, in the operation of a business within the franchise territory providing bookkeeping or income tax preparation services. It also prohibits Defendants from diverting or attempting to divert customers located within the franchise territory. Based on the current record, these restrictions are reasonable because they do not altogether prevent Defendants from doing accounting work within the franchise area or from accepting unsolicited business from the

forbidden customers.  They simply cannot operate such a business as an owner or in a managerial capacity.  The covenant not to compete arguably does not prohibit them from being employed in such a business that is owned and managed by someone else as long as they do not divert customers.  *See Baggett*, 231 Ga. App. at 298, 498 S.E.2d at 355 (upholding covenant prohibiting solicitation and diversion of clients); *cf. Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377-78, 297 S.E.2d 473, 476 (1982) (refusing to enforce covenant which prohibited former employee from *accepting* employment from *all* clients of former employer, not just from active solicitation or diversion of clients for whom employee had worked).  For these reasons, based on the current record, the covenant not to compete in the Agreement would be enforceable under Georgia law, so application of Michigan law to enforce the Agreement would not contravene the policy of or be prejudicial to the interests of the State of Georgia. Furthermore, there is nothing in the record tending to show that the covenant not to compete is unreasonable—and therefore unenforceable—under Michigan law.  *See Hoogenstyn*, 250 Mich. App. at 493, 650 N.W.2d at 678 (2002) (upholding as reasonable non-compete agreement forbidding home improvement products company's independent sales representatives from working for a substantially similar or competitive company in Michigan for three years after termination of the contract).  Therefore, the Court finds that Plaintiff has made a sufficient showing that the covenant not to compete is enforceable and that Defendants are violating it by operating a small business services company providing bookkeeping and tax preparation services within the franchise territory.

The remaining question is whether there is any reason why Plaintiff should not be able to enforce the covenant not to compete. Defendants contend that Plaintiff breached the Agreement sometime during 2000, did not fulfill all of its obligations under the agreement after that time, and did not answer some of Defendants' phone calls or timely respond to Defendants' voicemail messages. This, Defendants argue, amounts to unclean hands and should bar enforcement of the covenant not to compete. *See, e.g., Bd. of Regents of the Univ. Sys. of Ga. v. Buzas Baseball, Inc.*, 176 F. Supp. 2d 1338, 1348 (N.D. Ga. 2001) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945)) (noting that doctrine of unclean hands means that "he who comes into equity must come with clean hands" and that party seeking equity must have acted fairly and without fraud or deceit as to the controversy in issue). While Defendants have shown that Plaintiff may have performed poorly under the Agreement, poor performance of some contractual obligations—without more—does not constitute unclean hands. To date, Defendants have not shown, in their affidavits or otherwise, that they made Plaintiff aware of their complaints about Plaintiff's performance (or lack thereof) or requested improvement prior to their August 2005 letter purporting to terminate the Agreement. For these reasons, the Court is not satisfied that Defendants have made a sufficient showing of unclean hands to prevent enforcement of the covenant not to compete. Therefore, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of its claim based on Defendants' alleged breach of the post-termination covenant not to compete.

10

As to the remaining factors in the preliminary injunction analysis, Plaintiff contends that it will suffer an irreparable injury if the Court does not issue a preliminary injunction enforcing the covenant not to compete, that this injury outweighs any injury to Defendants, and that the injunction would not be adverse to the public interest.  Plaintiff notes that the covenant not to compete exists to preserve Plaintiff's ability to re-franchise the franchise territory, retain customers (and the customers' goodwill), and maintain the integrity of the franchise "system."  Each of these purposes will be impaired if the covenant not to compete is not enforced.  Because it is difficult to ascertain the monetary value of these injuries and because it may not be possible to undo some of the injuries through monetary damages, the Court is satisfied that Plaintiff will suffer irreparable harm if the preliminary injunction does not issue.  *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (noting that loss of customers and goodwill is "irreparable" injury).  While Plaintiff will suffer irreparable harm if the preliminary injunction does not issue, Defendants will suffer significant harm if it does issue. Specifically, if the covenant not to compete is enforced, Defendants will have to discontinue or move their business, which is their livelihood, until this case can be adjudicated on the merits. However, the Court finds that the balance weighs in favor of Plaintiff.  The Court does not reach this conclusion lightly. Although Defendants may suffer harm as a result of the injunction, this harm is the result of enforcement of a covenant not to compete to which Defendants agreed and which Defendants have not demonstrated violates public policy.  The Court further finds that enforcement of

an ostensibly enforceable covenant not to compete would not be adverse to the public interest. Accordingly, it is the determination of the Court that Plaintiff has carried its burden of demonstrating that it is entitled to a preliminary injunction enforcing the Agreement's covenant not to compete.

CONCLUSION

For the reasons discussed *supra*, the Court grants Plaintiff's Motion for Preliminary Injunction.

PRELIMINARY INJUNCTION

The Court issues the following preliminary injunction:

1. Defendants are hereby enjoined from operating a competing business in violation of the covenant not to compete contained in the Agreement for a period of one year from the effective date of this injunction. Specifically, Defendants are enjoined from engaging "as an owner or in any managerial capacity, in the operation of any business within the Franchise Territory providing bookkeeping or income tax preparation services."

2. Defendants are hereby enjoined from diverting or attempting to divert any customers in violation of the covenant not to compete contained in the Agreement for a period of one year from the effective date of the injunction. Specifically, Defendants are enjoined from diverting or attempting to divert "any customers (located within the Franchise Territory) to any competitor, by direct or indirect inducement or otherwise."

12

3. Defendants are hereby ordered to cooperate in the orderly transfer to Plaintiff or its designee of the clients and customers who were clients or customers of Defendants' Padgett franchise prior to Plaintiff's termination of the Agreement on October 12, 2005.

4. This injunction shall be effective as of the date of the giving of security by Plaintiff as required by Fed. R. Civ. P. 65(c).  The amount of the security shall be determined by the Court based upon the recommendations of the parties in the form of written briefs to be filed within twenty days of the date of this Order.

IT IS SO ORDERED, this 2nd day of February, 2006.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE